IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BILLY JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 14 C 4196 |
| | ) | |
| TARRY WILLIAMS, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Pro se petitioner Billy Johnson ("Johnson") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court jury conviction of first degree murder, discharging a firearm during the murder, and armed robbery. (Dkt. No. 1.) For the reasons explained below, Johnson's petition for a writ of habeas corpus is denied.

BACKGROUND

I. Factual Background

The following factual summary was set forth by the Appellate Court of Illinois for the First Judicial District ("Illinois Appellate Court") in Johnson's direct appeal:[1]

> The record reflects that [Johnson] was charged with the armed robbery and first degree murder of William Jones, IV. The murder charge was brought under multiple counts alleging intentional murder, knowing murder, and felony murder based on the commission of the armed robbery (720 ILCS 5/9-l(a)(1), 9-l (a) (2), 9-l(a)(3) (West 2004)). Each count in the indictment alleged that [Johnson] had personally discharged a firearm causing Jones' death.
> The evidence presented at trial established that in June 2004, Allen Faulkner lived at 1755 East 73rd Street in Chicago, along with his mother, his sister, and his brother, Andrew Buchanan. Faulkner is deaf, as are his mother and Buchanan. For several years,

---
[1] The court accepts as true the Illinois Appellate Court's recitation of the facts. *See* 28 U.S.C. § 2254(e)(1); *Whitman* v. *Bartow*, 434 F.3d 968, 969 (7th Cir. 2006).

Faulkner has known [Johnson] and codefendant Hannibal Eason, both of whom are also deaf. Faulkner communicates with [Johnson] through sign language but uses a combination of sign language and speaking to communicate with Eason.

On the evening of June 21, 2004, Eason was with Buchanan and Faulkner at their home when [Johnson] arrived and began showing them a semiautomatic handgun. According to Buchanan, Eason told [Johnson] that he wanted to rob someone, and [Johnson] responded that he was "not on that." Though Buchanan testified that he was unable to understand everything that was communicated between Eason and [Johnson], he stated that they had a "whispered" conversation and then both men nodded their heads "like they were coming to some kind of agreement." [Johnson] and Eason left the house and returned with a bottle of vodka, which the men drank while they also smoked some of [Johnson's] marijuana. [Johnson] had the gun in his possession when he went to visit his girlfriend, along with Eason and Faulkner.

The evidence further established that the three men subsequently boarded an eastbound bus on 63rd Street. [Johnson] and Eason sat down near Jones, who was wearing a Chicago Bears football jersey. All of the passengers exited the bus at the Stony Island Avenue terminus, where [Johnson], Eason, Faulkner, and Jones waited for a southbound bus.

Joyce O'Neil testified that she was riding on the eastbound 63rd Street bus along with [Johnson], Eason, Faulkner and Jones. According to O'Neil, [Johnson] and his companions were acting "rowdy" as if they had been drinking. She observed them communicating through sign language, and she heard Eason speaking. O'Neil stated that she exited the bus with the other passengers at the Stony Island Avenue terminus and then waited for the southbound bus with [Johnson], Eason, Faulkner, and Jones. While they waited, Faulkner kept looking at Jones' shoes, and Eason taunted Jones by giving him "looks," and "messing with" him. O'Neil further stated that she saw [Johnson] and Eason signing to each other a lot. When they boarded the southbound bus, [Johnson] and Eason sat near Jones. Eason started acting "frantic," and [Johnson] gestured to him to calm down. O'Neil testified that she got off the bus at 73rd Street, as did Jones, [Johnson], and his companions. She walked west toward her house, and Jones, who was followed by [Johnson], walked very fast in the opposite direction. O'Neil stated that she lost sight of Jones when he walked behind a van, but she then heard several gunshots. She later reported the incident to the police and viewed a photo array, from which she identified Faulkner as one of the men on the bus.

Faulkner testified that he observed [Johnson] and Eason discuss robbing Jones while they were riding on the bus, but he was unsure as to exactly when this conversation took place. As they rode south toward 73rd Street, [Johnson] and Eason talked about waiting to rob Jones until after they got off the bus so that there would be fewer people around. The men got off the bus at 73rd Street, and [Johnson] and Eason quickly followed Jones, who "kept looking around" as he walked very fast across the street. Faulkner stated that he observed [Johnson] and Eason scuffle with Jones, and Eason struck Jones with a vodka bottle. According to Faulkner, [Johnson] told Eason to get out of the way and then fired three shots at Jones. Faulkner further stated that he ran from the

2

scene when [Johnson] shot Jones. As he was fleeing, he saw [Johnson] and Eason run into an alley. [Johnson] and Eason later returned to his house. When he was advised by his sister that two police detectives had been looking for him, he told Eason and [Johnson] to leave.

The State presented evidence that the detectives returned to the house later that morning, and Faulkner agreed to accompany them to the police station. The following day, both [Johnson] and Eason were arrested and placed in a line-up, along with Faulkner. O'Neil positively identified all three men as the people she had seen on the bus.

After arranging for a sign-language interpreter in order to communicate with [Johnson], the detectives advised him of his Miranda rights, and he agreed to give a statement which was memorialized in writing by an Assistant State's Attorney and published to the jury.

[Johnson's] statement indicated that, on the evening of June 21, 2004, he had a nine-millimeter semiautomatic handgun when he was with Faulkner and Eason at Faulkner's house. They later went to see his girlfriend, with whom they drank vodka and orange juice. After leaving his girlfriend's house, the three men were waiting for a bus when Jones approached the bus stop. According to [Johnson's] statement, Eason signed to him to look at Jones' Chicago Bears jersey. Eason also signed "we need the money, we need the money, let's set him up." [Johnson] stated that he initially said "no," but that Eason kept repeating that they needed money. When the bus arrived, everyone boarded, including Jones. Eason began "talking tough" and "getting in [Jones'] face." [Johnson] also stated that he refused to give the gun to Eason, who said he was going to rob Jones on the bus. When Eason informed him that Jones was getting off at 73rd street, he responded that they should rob Jones after they got off the bus because it was close to Faulkner's house, and Eason agreed.

[Johnson] further stated that, when the bus stopped, they all got off and followed Jones for about a block. Eason caught up to Jones first and hit him on the head with a bottle of vodka. According to [Johnson's] statement, he then pulled out his gun, pointed it at Jones, and demanded money. When Jones responded that he didn't have any money, he fired his gun because he was "out of control and had been drinking." [Johnson] stated that he shot Jones three or four times from a distance of about eight feet. After he fired the shots, Eason went up to Jones and took his cellular telephone.

According to [Johnson's] statement, he and Eason ran to a backyard near an alley after the shooting, and the vodka bottle broke when they jumped over a fence. [Johnson] further stated that they initially hid the gun in Faulkner's house, but before going home, he gave the gun to Eason to hide.

The evidence adduced at trial established that Jones sustained four gunshot wounds to his chest and back, as well as an injury to his head. The police recovered three fired nine-millimeter cartridge casings near his body and three $1 bills and a ticket stub in his left hand. No cell phone or gun was ever recovered in connection with the shooting.

Following closing arguments, the jury found [Johnson] guilty of first degree murder and armed robbery and also found that [Johnson] had personally discharged the

firearm that caused Jones' death. The trial court sentenced him to serve a term of 47 years for murder and a consecutive term of 6 years for armed robbery.

*People* v. *Johnson*, No. 1-08-1380 at 2-7 (Ill. App. Ct. 1st Dist. 2010) (filed in this case as Dkt. No. 18-1, Ex. A).

## II. State Court Appeal

In his direct appeal to the Illinois Appellate Court, filed with the assistance of counsel, Johnson argued that (1) the Sate failed to prove his guilt of armed robbery beyond a reasonable doubt where the evidence did not adequately establish the *corpus delicti* for that offense, (2) his conviction and consecutive sentence for armed robbery should be vacated because the jury's general finding that he was guilty of murder should be interpreted as a conviction for felony murder, (3) the trial court erred in instructing the jury as to his eligibility for an enhanced sentence based on the personal discharge of a firearm, (4) the prosecutor's rebuttal closing argument was improper, and (5) the trial judge's examination of the venire did not comply with Illinois Supreme Court Rule 431(b). (Dkt. No. 18-2 at 9.)

On July 20, 2010, the Illinois Appellate Court affirmed Johnson's conviction and sentences. (Dkt. No. 18-1.) Johnson filed a petition for leave to appeal to the Illinois Supreme Court, (Dkt. No. 18-5), and the Court denied this motion on January 26, 2011. (Dkt. No. 18-6.)

On September 28, 2011, Johnson filed a *pro se* post-conviction petition under the Illinois Post-Conviction Hearing act, 725 ILCS 5/122-1, which did not raise any of the issues set forth in his direct appeal or his habeas petition currently before this court. (Dkt. No. 18-20 at 57-92.) On December 23, 2011, the Circuit Court of Cook county determined that the issues Johnson raised were frivolous and patently without merit, and dismissed his petition at the first stage of

proceedings. (*Id.* at 100-107.) On February 18, 2014, the Illinois Appellate Court issued a summary order affirming the circuit court's order and granting the State Appellate Defender leave to withdraw as counsel. (Dkt. No. 18-7.) Johnson filed a petition for leave to appeal to the Illinois Supreme Court, (Dkt. No. 18-10), which the Court denied on May 12, 2014. (Dkt. No. 18-11.)

**III.    Habeas Petition**

On June 5, 2014, Johnson filed a federal habeas petition raising four claims for relief, which this court summarizes as follows:

1. The State failed to prove Johnson's guilt of armed robbery beyond a reasonable doubt because the evidence failed to adequately establish the *corpus delicti* for that offense ("Claim 1");

2. Johnson's conviction and consecutive sentence for armed robbery should be vacated because the trial court erred in failing to issue separate verdict forms on the charge of felony murder ("Claim 2");

3. The trial court erred in instructing the jury as to Johnson's eligibility for an enhanced sentence based on the personal discharge of a firearm ("Claim 3");

4. The trial judge's examination of the venire did not comply with Illinois Supreme Court Rule 431(b) ("Claim 4").

(Dkt. No. 1 at 5-6.) The State urges this court to deny all of the claims set forth in Johnson's petition.

LEGAL STANDARDS

**I. Habeas Relief**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an individual in custody pursuant to a state court judgment may petition a federal district court for a writ of habeas corpus "on the ground that he [or she] is in custody in violation of the Constitution

5

or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is not entitled to habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402–03 (2000); *Warren v. Baenen,* 712 F.3d 1090, 1096 (7th Cir. 2013). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

Under the "unreasonable application" prong of the AEDPA standard, a petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407. "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir. 2012). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (citation omitted). As noted by the Seventh Circuit, "[f]ederal habeas relief from a state-court criminal judgment is not easy to come by." *Id.* at 1015 (quoting *Thompkins v. Pfister,* 698 F.3d 976, 983 (7th Cir. 2012)).

**II. Exhaustion and Procedural Default**

The AEDPA requires that a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its

6

prisoners' federal rights." *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See Mulero v. Thompson,* 668 F.3d 529, 536 (7th Cir. 2012). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). A petitioner also procedurally defaults a claim if he fails to raise his federal claim in compliance with relevant state procedural rules, and the state court's refusal to adjudicate the claim is based on an independent and adequate state ground. *See Cone v. Bell,* 556 U.S. 449, 465 (2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero,* 668 F.3d at 536.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that failure to consider the claim would result in a fundamental miscarriage of justice. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)). Cause is defined as "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding. Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." *Id.* at 382 (quotation and citation omitted). "The fundamental miscarriage of justice exception requires the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.*

ANALYSIS

**I. Claims Two and Three Are Procedurally Defaulted**

As a threshold matter, Claims Two and Three are procedurally defaulted because the Illinois Appellate Court rejected them on independent and adequate state law grounds. In Claim Two of his petition, Johnson appears to raise the same claim he presented to Illinois Appellate Court in his direct appeal: that in the absence of specific findings by the jury, the general verdict finding him guilty of murder must be construed as a conviction of felony murder, which would preclude a conviction on the underlying felony of armed robbery. The Illinois Appellate Court held that this claim was not properly preserved for review because Johnson did not object to the issuance of a general verdict form or tender a request separate for verdict forms on the alternative murder counts. (Dkt. No. 18-1 at 27-33.) The Illinois Appellate Court's decision that Johnson waived his due process claim by not requesting separate verdict forms rests on an adequate and independent state ground, thus foreclosing federal review. *See Murphy v. Pfister*, No. 12 C 8867, 2013 WL 1112080, at *4 (N.D.Ill. Mar. 15, 2013). Although the state appellate court reviewed Johnson's forfeited claim for plain error, such review does not excuse a default unless the state court actually identifies a plain error, which did not happen here. *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) ("We consistently have held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits."). Accordingly, Claim Two is procedurally defaulted and federal review of this claim is barred.

In Claim Three of his petition, Johnson argues that the verdict forms and jury instructions

relating to his use of a gun violated due process by shifting the burden of proving his innocence onto him. The Illinois Appellate Court held this claim procedurally defaulted because Johnson did not raise the issue at trial or in his post-trial motion for a new trial. (Dkt. No. 18-1 at 22.) Illinois's requirement that issues be preserved with a contemporaneous objection and post-trial motion is an adequate and independent procedural bar to habeas relief. *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005). The fact that the appellate court proceeded to review and reject Johnson's claim on the merits in an alternate holding does not alter the procedural bar. See *Lee v. Davis,* 328 F.3d 896, 900 (7th Cir.2003) ("Even when both the merits of a claim and a state procedural bar are discussed together, the state procedural grounds will be determinative if they are clearly presented and they constitute an adequate independent ground ...."). Thus Claim Three is also procedurally defaulted federal review of this claim is barred.

Johnson's defaults may be excused if he can establish cause and prejudice for the default. In his Reply, Johnson correctly argues that ineffective assistance of counsel can constitute cause to set a procedural default. (Dkt. No. 21 at 4.) However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). If the ineffective assistance claim was itself not properly exhausted in state court, the petitioner will be considered "fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 766–67 (7th Cir. 2002).

Although Johnson did raise two ineffective assistance of counsel claims in his post-conviction petition, his present ineffective assistance allegations rests on a theory which is separate and distinct from the two claims previously considered and rejected in state court. In his post-conviction petition, Johnson first argued that his trial counsel was ineffective for failing to

9

investigate and call two witnesses. (Dkt. No. 18-20 at 83-86.) Johnson also argued that his appellate counsel was ineffective for failing to raise the issue of trial counsel's deficiency. (*Id.* at 87-88.) However, he did not did not argue that his trial counsel was deficient for failing to request separate verdict forms or object to the jury instructions relating to his use of a gun. Johnson also did not argue that this appellate counsel was ineffective for failing to raise the issue of the trial counsel's deficiency on these grounds. Because the factual basis for the ineffective assistance theory that Johnson is now trying to advance as cause for his default was not properly presented in state court, Claims Two and Three are defaulted. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."); *see also Wong v. Money*, 142 F.3d 313, 321-22 (6th Cir. 1998) (ineffective assistance of counsel claim procedurally defaulted where petitioner's argument in state courts relied upon different grounds than argument on habeas appeal). Since cause for the procedural default has not been established, the court need not address prejudice. *Dellinger v. Bowen*, 301 F.3d 758, 766–67 (7th Cir. 2002).

Without cause, a "defaulted claim is reviewable only where a refusal to consider it would result in a fundamental miscarriage of justice." *United States ex rel. Bell v. Pierson,* 267 F.3d 544, 551 (7th Cir. 2001). This relief is limited to situations where the constitutional violation has probably resulted in the conviction of one who is actually innocent. *Smith,* 598 F.3d at 382. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* Johnson has not presented any new evidence suggesting his innocence. To the contrary, the record demonstrates that the jury was presented with substantial, indeed overwhelming, evidence of Johnson's guilt.

Accordingly, Johnson does not fit within the "miscarriage of justice" exception necessary to overcome his procedural defaults.

## II. Claims One and Four Are Not Based on Cognizable Grounds for Federal Habeas Relief

Claims One and Four are not cognizable because § 2254 limits habeas review to errors of federal law, and both Claims One and Four would require interpretations of Illinois state law. *See Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). In Claim One, Johnson argues that his conviction of armed-robbery violates Illinois' *corpus delicti* rule, which requires partial corroboration of confessions. (Dkt. No. 1 at 5.) Illinois' *corpus delicti* rule is not required by the United States Constitution. *Lane v. Uchtman*, No. 05 C 6102, 2009 WL 4788780, at *12 (N.D. Ill. Dec. 9, 2009). In Claim Four, Johnson argues that the trial judge violated Illinois Supreme Court Rule 431(b), which regulates voir dire examination in Illinois. (Dkt. No. 1 at 6.) Because compliance with Illinois Supreme Court Rule 431(b) is not required by the United States Constitution, this is not a cognizable ground for habeas relief. *See Rosario v. Akpore*, 967 F. Supp. 2d 1238, 1249-50 (N.D. Ill. 2013). In his Reply, Johnson concedes that both Claims One and Four do not present cognizable grounds for habeas relief. (Dkt. No. 21 at 6, 10.)

## III. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings for the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, the petitioner must have made a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2); *Slack* v. *McDaniel*, 529 U.S. 473, 483 (2000). Further, when a district court

rejects a claim on the merits, the standard requires the petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484. In order to obtain a certificate of appealability when a district court utilizes procedural grounds to dismiss a federal habeas petition, the prisoner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* For the reasons set forth above, Johnson has not made a substantial showing that he was denied a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should have been resolved differently or determine that Johnson deserves encouragement to proceed further with his habeas claims. *See Rutledge* v. *United States*, 2230 F.3d 1041, 1047 (7th Cir. 2000). The court therefore declines to issue a certificate of appealability.

## CONCLUSION

For the reasons explained above, Johnson's petition for relief under 28 U.S.C. § 2254 [1] is denied, and the court declines to issue a certificate of appealability. Civil case terminated.


ENTER:

                                            */s/ James F. Holderman*
                                      JAMES F. HOLDERMAN
                                      United States District Court Judge


Date:   May 20, 2015